## City Court.

### *General Term—October*, 1884.

## CHARLES G. MARTIN ET AL. *against* ELIZA RILLINGS.

An owner of real estate may employ as many brokers as he pleases, and is liable only to the one who finally procures the customer.

Where there are two brokers, the one who first calls the customer's attention to the property is not necessarily entitled to brokerage, and if the other broker in good faith and without collusion consummates the sale he is entitled to the commission.

In an action by the first broker it is competent to prove that the owner paid the brokerage to the second party.

Appeal from a judgment entered upon a verdict in favor of the plaintiffs.

*James Flynn* and *E. H. Benn*, for defendant and appellant.

*S. A. & D. J. Noyes*, for plaintiffs and respondents.

McADAM, Ch. J.—The action is for brokerage in procuring a tenant for certain premises belonging to the defendant, and the substantial question presented is whether the plaintiffs or one Charles S. Peck procured the tenant to whom the defendant leased the property.

The plaintiffs are real estate brokers, and Peck is also a broker. The plaintiffs were employed to find a tenant,

Martin v. Rillings.

and Peck was likewise employed. The defendant had the right to employ as many brokers as she pleased, and was obligated to pay the one who negotiated a contract on her terms and no other; for to entitle a broker to commissions it is essential that he shall be the procuring cause of the contract finally made (White v. Twitchings, 26 *Hun*, 503). The plaintiffs were employed to find a tenant willing to pay $3,000 per year; this they failed to do. They called Dewey's attention to the property, and introduced him to the defendant, but he would not agree to pay the required rent. Finally Dewey saw Peck, the other broker, and through him an agreement was consummated by which Dewey took the property in January, 1884, at $2,250 per year after May 1, 1884, and agreed to pay $300 for the intervening time—to wit, to May 1, 1884. This arrangement was negotiated in Peck's office. The plaintiffs were not parties to the negotiation and did not aid in its final consummation. Peck was therefore the procuring cause of the letting—actually made—and earned the commission.

If there had been no intervening agency, and the defendant had let the premises to Dewey, even at a reduced rent, the plaintiffs might with some propriety have claimed that their efforts led to the contract, and that they were in consequence entitled to the brokerage. But there was an intervening agency, and Peck seems to have brought about a successful consummation of the contract made. As between the two rival brokers, Peck was the procuring cause of the letting.

Where there is, as in this case, a dispute between rival brokers, it is difficult at times to draw the line and decide which in law earned the commission claimed; but it is clear to us from the evidence that Peck succeeded in bringing about a meeting of the minds of the parties in interest—a duty which the plaintiffs undertook but failed to perform. Dewey, the person who hired the premises, was not called as a witness upon

the trial. His evidence would have aided us materially in determining the question of procuring cause. His testimony may be procured upon the next trial of the action. Why he was not produced as a witness does not distinctly appear. Upon the trial the plaintiff, William C. Martin, was asked about him, and said he had not subpœnaed or requested him to attend, and when asked, "Didn't you get the trial of this action postponed once or twice on the ground that he was a material witness for you?" the plaintiff's counsel objected to the question, and the objection was sustained and the defendant excepted. The defendant, upon the trial, offered to show that she had paid Peck the brokerage claimed. The plaintiff objected to this evidence, and the trial judge sustained the objection, to which the defendant also excepted. We think that, in view of the facts, this evidence was competent, as tending to show the good faith of the defense. True, it was not conclusive against the plaintiffs, but it was not wholly irrelevant.

Upon the entire case, it is clear to us that the verdict cannot be sustained. The judgment must, therefore, be reversed, and a new trial ordered, with costs to the appellant to abide the event.

NEHRBAS and HYATT, JJ., concur.